IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

LAURA C. FENIMORE and BRIAN
HUBBLE,

               Plaintiffs,

     vs.

LANE COUNTY REPUBLICAN CENTRAL
COMMITTEE; JOHN E. LARGE; JEFFREY
W. LOZAR; MARIAN TROPE; and DOES 1-
10,

               Defendants.

Case No. 6:20-cv-01844-AA
**OPINION AND ORDER**

_____

AIKEN, District Judge:

     Laura Fenimore ("Fenimore") and Brian Hubble ("Hubble") (collectively,
"Plaintiffs") allege violations under the Americans with Disabilities Act ("ADA") and
Oregon state law, ORS 659A.142(4) against Defendants Lane County Republican
Central Committee ("LCRCC") and its members, John Large ("Large") and others
(collectively, "Defendants"). Defendants move to dismiss Plaintiff's claims under

Federal Rule of Civil Procedure 12(b)(6). Plaintiffs' move to strike Defendants' declarations and exhibits. For the reasons stated below, Defendants' Motion to Dismiss ("MTD"), ECF No. 26, is GRANTED and Plaintiffs' Motion to Strike, ECF No. 34, is thus DENIED as moot.

## BACKGROUND

Fenimore, who has a disability that requires her to use a wheelchair, and Hubble, her caregiver, were elected by the Republican voters of Lane County to serve as Precinct Committee Persons ("PCPs") as members of LCRCC. Defendant Large is also a PCP and Chairperson of LCRCC. FAC ¶¶ 7, 11, 12, 14,

LCRCC notified its members that it would hold its next meeting outdoors at Large's rural residential property, which Fenimore alleges is not wheelchair accessible. When Fenimore learned that the LCRCC meeting would be held at Large's property, she was concerned she would not be able to navigate it. Plaintiffs allege that they conveyed accessibility concerns in a letter mailed to members of LCRCC, but that the letter was not well received and that LCRCC did not change the location of the meeting. FAC ¶¶ 16, 17, 19.

Plaintiffs contend that, when they arrived at the meeting, the site was not flat and the field was uneven. FAC ¶ 21. Large approached Plaintiffs and asked them to leave his private property. FAC ¶ 22. Plaintiffs allege that a group of LCRCC members gathered around Plaintiffs' van and shouted, "this is private property." FAC ¶ 23. Eventually, LCRCC started the meeting on the lawn some distance from

where Plaintiffs remained near their van where they could not participate in the meeting.  FAC ¶ 27.

Plaintiffs filed their Complaint, and later their FAC under Oregon state law and 42 U.S.C. § 12132 ("Title II"); 42 U.S.C. § 12182 ("Title III"); and the anti-retaliation provision under 42 U.S.C. § 12203 ("Title V").  Defendants filed the Motion to Dismiss ("MTD") now before the Court.[1]

## STANDARD OF REVIEW

To survive a motion to dismiss under the federal pleading standards, the complaint must include a short and plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court is not required to accept legal conclusions, unsupported by alleged facts, as true. *Id.* The complaint must contain more than "naked assertion[s,]" "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to state a claim for relief. *Bell*, 550 U.S. at 555-57.

## DISCUSSION

---

[1]     The Court did not review or rely on Defendants' declaration, which Plaintiffs move to strike, in ruling on Defendant's MTD.

Plaintiffs allege four claims by which they seek declaratory and/or injunctive relief and recovery of noneconomic damages and reasonable attorney fees and costs. Plaintiffs claim that: LCRCC is a public entity which unlawfully discriminated against Plaintiffs in violation of Title II; alternatively, LCRCC discriminated against Plaintiffs in a place of public accommodation in violation of Title II; LCRCC and Large discriminated against Plaintiffs in a place of public accommodation in violation of ORS 659A.142(4); and against "all defendants" for unlawful retaliation under Title V.

## I.    Title II – Whether LCRCC is a Public Entity

To support the claim that LCRCC is a public entity, Plaintiffs allege that LCRCC is governed by a board of precinct committee persons elected by the voters of Lane County, Oregon. FAC ¶ 30. Defendants move to dismiss on the basis that LCRCC is not a public entity within the meaning of the ADA, because it meets none of the statutory definitions for a public entity. Defendants add that LCRCC is not transformed into a public entity merely because registered Republicans vote to elect PCPs from among themselves. MTD at 4-5. Further, Defendants contend that state regulation in and of itself does not transform the regulated into a public entity. *Id*.

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Therefore, "[t]o prove a public program or service violates Title II of the ADA, a plaintiff must show: (1) he is a "qualified

individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (citing 42 U.S.C. § 12132).

The ADA defines a "public entity" as "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B).    The Department of Justice issued an ADA Title II Technical Assistance Memo, II-1.2000 ("Title II Memo"). According to the Title II Memo, there are four factors helpful to consider to determine whether an entity is a public entity subject to the requirements of the ADA: (1) whether the entity is operated with public funds; (2) whether employees of the entity are considered government employees; (3) whether the entity receives significant assistance from the government in the form of equipment or property; and (4) whether the entity is an independent board selected by members of a private organization, or a board elected by the voters or appointed by elected officials. *See Melton v. Orange County Democratic Party,* 304 F.Supp.2d 785, 786-87 (2004) (applying the Title II Technical Assistance Memo framework to analyze whether a political party was a public entity within the meaning of Title II of the ADA); *see also San Francisco Cnty. Democratic Cent. Comm. v. Eu*, 826 F.2d 814, 825 (9th Cir. 1987), *aff'd*, 489 U.S. 214 (1989) (discussing without deciding that political party was not public entity in First Amendment context).

Here, Plaintiffs' allegations to support the contention that LCRCC is a public entity include only that LCRCC elects its PCPs.  FAC ¶ 30.  Plaintiff does not allege any facts which meet the statutory definition of "public entity" under 42 USC § 12131(1).  Plaintiff's allegation appears to be based upon the fourth factor published by the DOJ in its Title II Memo, which is whether the entity is "an independent board selected by members of a private organization, or a board elected by the voters or appointed by elected officials."  Plaintiffs do not allege any facts that demonstrate whether the LCRCC is operated with public funds; whether it has employees that are considered government employees; whether LCRCC receives significant assistance from the government in the form of equipment or property

Though Plaintiffs appear to base their allegation on the fourth factor in the Title II memo, the facts in Plaintiffs' FAC do not show that the LCRCC, its members, or PCPs are an independent board "elected by the voters" or "appointed by elected officials."

Defendants point out that Plaintiffs cannot allege that the voters elect PCPs, where Oregon state law dictates "a major political party shall *elect from its members* a precinct committeeperson for every 250 electors." ORS § 248.015(1) (emphasis added). The statutory language indicates that each PCP represents registered Republicans in Lane County, and not "voters" at large. Facts in Plaintiffs' FAC reflect the practical operation of this law. An elector must first decide to affiliate with the Republican Party in Lane County before that elector is eligible to a say in the

composition of the LCRCC. Thus factor (4) weighs against Plaintiffs' argument as well.

Other courts have taken a comparative approach to supplement analysis under the Title II Memo. For example, in *Melton*, the Court discussed organizations which previous Courts had found to be public entities, including "public universities, state judicial nominating commissions, boards of trustees of a city police pension fund, city zoning boards of appeals, and state boards of law examiners." 304 F.Supp.2d at 788 (internal citations omitted). Characteristics shared by these organizations are that they were (a) given authority under local law to provide services to the city or state; and (b) created by the state or local government; or (c) worked for general government purposes. *Id.*

Plaintiffs argue facts they alleged in the FAC show "the state created the LCRCC as an instrumentality for regulating major political parties at the county level." Pls.' Resp. at 9, ECF No. 30. PCPs have some authority under state law, but that authority is limited to representation of members of the local Republican Party. *See* ORS § 248.015(1). Citizens of Oregon must first register as Republicans in order to have a say in the composition of LCRCC, thus LCRCC is created by Republicans in Lane County and subsequently regulated by the State. Under Plaintiffs' factual allegations, LCRCC also has no authority to provide services to the city or state and does not work for general government purposes. State regulation alone is an insufficient ground to show that LCRCC is a public entity.

The Court finds that the facts Plaintiffs alleged, taken as true, are insufficient to establish that LCRCC is a public entity within the meaning of Title II. Plaintiffs have not sufficiently sustained a claim under Title II of the ADA.

## II.    Title III Public Accommodation

Plaintiffs claim that even if LCRCC is not a public entity within the meaning of Title II of the ADA, it is at least a "place of public accommodation" withing the meaning of Title III. Consequently, Plaintiffs argue, LCRCC violated the Title III by discriminating against Fenimore. Title III prohibits discrimination against an individual on the basis of disability from enjoying "the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation." 42 U.S.C. § 12182(a).

Under Title III, if an entity is not a public entity, it is a private entity, but only some private entities are considered public accommodations, "if the operations of such entities affect commerce." 42 U.S.C. §§ 12181(6) & (7). In the context of the ADA, "commerce" is defined as "travel, trade, traffic, commerce, transportation, or communication *among the several states*." 42 U.S.C. § 12181(1)(A) (emphasis added). If the operations of a private entity affect commerce, then the entity must also fit into one of 12 statutory categories of private entities which are considered public accommodations. 42 U.S.C. § 12181(7).

To show that Large's rural property was a place of public accommodation, Plaintiffs must first show that LCRCC's operations on Large's property affected

commerce. In other words, Plaintiffs must show that by using Large's property as a meeting venue, LCRCC affected the market for such meeting venues, and that the effect was substantial enough to be felt across state lines. The facts Plaintiffs allege in the FAC do not support this contention.

Plaintiffs argue that although Large's property is private and residential, it temporarily became public and thus entered the market for meeting spaces when Large offered it to LCRCC as a site for members to gather. *See* Pls.' Resp. at 13-14, ECF No. 30. But Plaintiffs do not allege any facts showing that that LCRCC is a consumer in the market for meeting spaces. Facts in the FAC do not show how LCRCC is a participant in commerce. Facts in the FAC also fail to show how LCRCC could have any "'substantial effect on supply and demand in the national market'" for meeting venues. *Id.* (*citing Gonzales v. Raich*, 545 U.S. 1, 19 (2005)). Thus, Plaintiffs have not alleged sufficient facts to create a threshold showing that LCRCC's operations on Large's land affected commerce within the meaning of Title III.

The allegations in Plaintiffs' FAC have not established that LCRCC operations on Large's property rendered Large's property a place of public accommodation, such that Defendants' actions toward Fenimore constituted a violation of Title III.

## III.    Retaliation under Title V

Plaintiffs" claim that LCRCC, Large, and other PCPs unlawfully retaliated against Plaintiffs for voicing concerns about ADA compliance, by behaving in an intimidating and hostile way. To state a claim under Title V, a claimant must allege facts tending to show that defendant discriminated against claimant, and that

defendant did so for the reason that plaintiff engaged in a "protected activity." A protected activity includes opposition to "any act or practice made unlawful by [the ADA]." *Id.*

Plaintiffs argue that a claim for retaliation is independent of a determination of whether defendants violated Title II or Title III of the ADA. Plaintiffs point to cases holding that retaliation a claim is justiciable if the claimant has a good faith, reasonable belief that the violation did occur, whether or not the underlying ADA violation occurred. *See e.g. Daoud v. Avamere Staffing, LLC*, 336 F.Supp.2d 1129, 1138 (D. Or. 2004); *see also Melendez v. Monroe College*, 2006 WL 2882568 (E.D. New York 2006) ("[A] successful discrimination claim is not a predicate for a retaliation claim."). However, cases on which Plaintiffs rely are distinguishable. In those cases, defendants were public entities under Title II or places of public accommodation under Title III. Thus, the question in the adjudication of the first instance of disability discrimination was about what the defendant *did*, not what the defendant *was*. Conduct at issue in a retaliation claim occurs later, in response to the claimant's response to an alleged violation.

The question of whether Defendants are subject to the ADA is present here. As such, precedent Plaintiffs cite to insulate their retaliation claims from the outcome of Plaintiffs' Title II and Title III claims is inapplicable. To borrow Defendants' words, "power to regulate 'retaliation' necessarily assumes some sort of jurisdictional power over the regulated entity to begin with." Defs.' Reply at 11, ECF No. 32. Because Plaintiffs failed to allege facts to show that the ADA applied to Defendants, either as

a public entity under Title II or a place of public accommodation under Title III, Plaintiffs also cannot sustain a retaliation claim. The facts in the FAC do not tend to show that the ADA applies to Defendants at all. Thus, activities Plaintiffs engaged in were not protected, and no retaliation occurred within the meaning of the ADA.

## IV.    State Law Claim

Plaintiffs claim that Defendants also violated Oregon state law, which prohibits "any place of public accommodation ... or any person acting on behalf of such place," to discriminate against a "customer or patron" based on disability. ORS 659A.142(4). Plaintiff must allege facts which tend to show both that Defendants are or are acting on behalf of a place of public accommodation, and that Plaintiff is a customer or patron of Defendants such that ORS 659.142(4) applies to her. The Court refers to the Oregon's jurisprudence to determine whether Plaintiff's claim surmount this burden.

### a.    Place of Public Accommodation

Plaintiffs claim LCRCC and Large's property are places of public accommodation. Under Oregon law, a place of public accommodation includes "any place or service offering to the public accommodations, advantages, facilities or privileges whether in the nature of goods, services, lodgings, amusements, transportation or otherwise." ORS 659A.400(1)(a). To qualify as a place of public accommodation under this Section, an organization must be commercial in nature. Plaintiffs do not allege sufficient facts in the FAC to show either that LCRCC or that

Large's property is commercial in nature, and thus do not show that either is a place of public accommodation.[2]

The Oregon Supreme Court most recently addressed the issue of the nature of a place of public accommodation in 2022, holding that a medical provider operating within a detention facility was a place of public accommodation. *Abraham v. Corizon Health, Inc.*, 369 Or. 735, 758 (2022). State courts' past treatment of the question, the language of the law, and the legislative history all clarify that a public accommodation is commercial in nature. *See Id.* at 745-53.[3]  Although the law has been updated, the underlying purpose of the Legislature to "prohibit discrimination by business or commercial enterprises which offer goods or services to the public" remains relevant. *Id.* at 746 (quoting *Schwenk v. Boy Scouts of America*, 275 Or. 327, 334 (1976).

---

[2]    The Court considers LCRCC and Large's property as separate entities in light of the *Abraham* decision. 369 Or. at 755 ("If defendant qualifies as a place of public accommodation because of the services that it provides, it does not matter whether it provides those services at a physical location that independently qualifies as a place of public accommodation.").

[3]    In *Abraham*, the Oregon Supreme Court dealt not with the issue of whether the entity in question was commercial in nature, but instead with whether the entity provided services to a sufficiently broad swath of the public to be considered a public accommodation. However, the Court's analysis of legislative history is still relevant to the question of commercial nature because it reflects the through line of the 1976 legislative purpose to deal with discrimination by businesses and commercial enterprises. The *Abraham* decision cites the test from *Lahmann v. Grand Aerie of Fraternal Order of Eagles* to solidify this purpose: "[T]he question whether an organization is a place of public accommodation turns on (1) whether it is a business or commercial enterprise and (2) whether its membership policies are so unselective that the organization can fairly be said to offer its services to the public." 180 Or.App. 420, 434 (2002).

The full language of the ORS 659A.400(1)(a) is also instructive: Sections (1)(b) and (c) of that statute define other types of places of public accommodation "regardless of whether the [place or service] is commercial in nature." But this language is absent from Section (1)(a), the section under which LCRCC or Large's property might fit, since they are neither "a place open to the public and owned or maintained by a public body" under Section (1)(b) or a "service to the public that is provided by a public body" under Section (1)(c). The absence of an explicit removal of a requirement of a commercial nature in Section (1)(a) implies that the requirement remains in place. An organization must be commercial in nature to be considered a place of public accommodation under ORS 659A.400(1)(a).

Large's property is not a place of public accommodation because it is distinctly not commercial in nature. Large offers no services to the public and has not engaged in any commercial transaction related to the use of his private residence as a meeting place. Plaintiff is clear that no money changed hands, and that Large's property is a private residence. LCRCC is also not a place of public accommodation because, while it may provide a service to a subset of the public, that service is not commercial in nature. If LCRCC provides any service to the public, it is one of a civic, community nature. As such, Plaintiffs have not alleged any facts which show either Large's property or LCRCC meet the definition of a place of public accommodation under Oregon state law.

### b.    Customer or Patron

Plaintiffs claim that Fenimore is a customer or patron of LCRCC and Large's property. Since neither "customer" or "patron" are defined in the statutory text of ORS 659A.142(4), Oregon courts look to the "ordinary meaning" of the terms, or the dictionary definition contemporaneous with the passage of the statute. *See e.g., Fenimore v. Blachly-Lane Cty. C.E.A.*, 297 Or. App. 47, 54 (2019) (citing *Comcast Corp. v. Dept. of Rev.*, 356 Or. 282, 295-96 (2014)). A "customer" is a person who "'purchases some commodity or service,' and 'one that patronizes or uses the services (as of a library, restaurant, or theater.)'" *Id.* (citing Webster's Third New Int'l Dictionary 559 (unabridged ed. 2002)).

A "patron" is "'a steady or regular client, as an habitual customer or merchant.'" *Id.* (citing Webster's at 1656) (*see also Abraham v. Corizon Health, Inc.*, 369 Or. 735, 741 (2022)). Based on context within the broader statutory scheme and legislative history, the phrase "customer or patron" has a limited scope and does not encompass the same broad category of people as the term "person" or "individual." *Id.*, at 54-59 (explaining why Oregon's state disability discrimination statute applies to a narrower group of people, namely customers and patrons of places of public accommodation, when compared with the federal analog, the ADA). Plaintiffs did not allege sufficient facts in the FAC to show that Fenimore was either a customer or a patron of LCRCC or of Large's property.

Plaintiffs argue Fenimore was a customer of LCRCC, and by extension Large and Large's property, because Fenimore was "using the services that they provided." Pls.' Resp. at 15, ECF No. 30. To support this contention, Plaintiffs emphasize

Fenimore's position as a PCP and membership in LCRCC, as a fact distinguishing the case now before the Court from Fenimore's previous case brought under ORS 659A.142(4) in 2019 (cited above). *Id.* In that case, Fenimore's *lack* of membership in the C.E.A. (a cooperative electric association) proved dispositive. *See Fenimore v. Blachly-Lane Cty. C.E.A.*, 297 Or. App. 47, 59-60 (2019). But this was only true because without membership in the C.E.A., Fenimore also could not use C.E.A.'s services and thereby could not be a customer of the C.E.A. *Id.* at 48.

The case now before the Court is distinct from the Oregon Court of Appeals decision in *Fenimore*. If the representation provided by LCRCC to the community is a service, Fenimore's membership in LCRCC as a PCP would make her a provider of that service and not a customer or patron. Plaintiffs do not allege any facts showing that LCRCC provides any other service to anyone. As for Large and his property, any service he provides is distinctly not commercial, as discussed above. In addition, facts alleged by Plaintiffs seem to indicate that Plaintiffs' and LCRCC's use of Large's property is not steady or habitual. Plaintiffs allege no facts in the FAC to show Fenimore was a customer or patron of LCRCC or of Large and his property. Thus, Plaintiffs' claims are not sufficient to show that Oregon law prohibiting discrimination at places of public accommodation applies.

In sum, it does not appear that Plaintiffs can state a claim for which relief can be granted under any cause of action Plaintiffs allege.

## CONCLUSION

For the reasons explained above, Plaintiff has not alleged sufficient facts to sustain a claim under the ADA or under Oregon state law. Accordingly, Defendants' Motion to Dismiss, ECF No. 26, is GRANTED. Plaintiff's FAC, ECF No. 25, is DISMISSED without leave to amend. All other pending motions are DENIED as moot. Judgment shall be entered accordingly.

IT IS SO ORDERED.

Dated this <u>10th</u> day of <u> March </u> 2023.

<u>          /s/Ann Aiken          </u>

Ann Aiken
United States District Judge